UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| DERRICK DWAYNE SCOTT,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Administrator of Social Security,<br><br>    Defendant. | Case No. 13-cv-03521 NJV<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23 & 27 |

Plaintiff Derrick Dwayne Scott ("Plaintiff") appeals the denial of his application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act ("the Act") (AR 27-37.). *See* 42 U.S.C. Sections 1381 *et seq.* On February 22, 2013, the Appeals Council denied Plaintiff's request for review of the administrative law judge's decision. (AR 5-7.). The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. Doc. Nos. 5 & 11. The court therefore may decide the parties' motions for summary judgment.

For the reasons stated below, the court will deny Plaintiff's Motion for Summary Judgment and will grant Defendant's Cross-Motion for Summary Judgment. Docs. 23 & 27.

**PROCEDURAL HISTORY**

Plaintiff filed an application for Title II Disability Insurance benefits and Title XVI Supplemental Security benefits on January 20, 2010, alleging an onset date of disability of February 1, 2004. (AR 168-176.) The alleged onset date was subsequently amended to December 2, 2009. (AR 230.) Plaintiff's Title II claim was denied on January 25, 2010 (AR 87),

and was not appealed. The Title XVI claim was denied initially on May 27, 2010. (AR 91-96.) Plaintiff filed a request for hearing on January 18, 2011, and a hearing was held before an Administrative Law Judge on August 22, 2011. (AR 43-76.) The ALJ denied the claim in a decision dated October 26, 2011. (AR 24-42.) Plaintiff's request for review was denied by the Appeals Council on February 22, 2013. (AR 5-10.)

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE EVIDENCE

Left hand

Plaintiff reported to Dr. Ring on March 10, 2010, that he had "long standing pain in his left hand and inability to extend all of his fingers." (AR 252.) Dr. Ring observed, "[l]eft hand with contracture and thickening of the palmer facia with flexion contractures of the 4th and 5th fingers. There is a tender 2 cm nodula proximal to the 5th MP joint." *Id*.

On July 29, 2011, Richard B. Greany, M.D., took x-rays of Plaintiff's left hand. (AR 616-17.) Among other findings, Dr. Greany found that the x-rays showed mild to moderate deformities in the forth digit PIP joint and modest flexion deformity of the fifth digit PIP joint. *Id*. No significant arthropathy was seen and there was no evidence of acute bony abnormality. (AR

616.)

Plaintiff testified before the ALJ on August 22, 2011, that he was right-handed. (AR 53.) He stated that he injured his left hand early in the 1980's, probably in 1982. *Id.* When asked when in the last two years he had gotten treatment for his left hand, Plaintiff responded that he had been referred for x-rays and that he was in the process of getting a referral for a specialist to examine his hand. (AR 54-55.)

<u>Depressive Disorder</u>

Plaintiff began receiving mental health services from the Mobile Medical Office in 2004. (AR 249-55.) On February 18, 2004, he reported to Wendy Ring, M.D., that he had last used methamphetamines in May 2004, he had last consumed beer on February 14, 2004, and he had last used marijuana on February 4, 2004. (AR 253.) On December 1, 2004, he told Dr. Ring that his "depressive symptoms were well controlled until he ran out of medication." (AR 251.) He next returned to the Mobile Medical Office in September 2006, when he received a refill of his prescription for Remeron. (AR 249.)

On March 31, 2008, Plaintiff received mental health services from Humboldt County while he was incarcerated. (AR 421.) He reported that he was "doing well on [his] current dose of Remeron" and stated that he had formerly had a depressed mood, irritability and night time awakening. *Id*. His mental status was found to be normal. *Id*.

On September 29, 2008, he reported a "history of depression in midst of murder trial" and that he was grieving for a friend who had died. (AR 411.) He declined to increase his antidepressant medication at that time. *Id*.

On February 20, 2009, he reported that he had been incarcerated for almost one year on a murder charge and was "fighting [his] case." (AR 406.) He reported racing thoughts, depression, "anguish," and irritability. (AR 406.)

Plaintiff's Mental Health Treatment Plan from San Quentin State Prison dated August 18, 2009, noted that Plaintiff reported that his current depression was due to his incarceration. (AR 327.) The Treatment Plan further noted that Plaintiff did not describe major depressive episodes, mania or psychosis. (AR 328.)

1    Plaintiff's records from the Department of Corrections from 2010 show that his mental
2    status examinations were unremarkable. In January, February, and March he reported no mental
3    or physical issues. (AR 651-52.) In May and June he reported that he was "doing good." (AR
4    649-50.)

5    On April 28, 2010, State consultative examiner Robert Bilbrey, Ph.D., examined Plaintiff
6    and assessed his mental capabilities. (AR 437-41.) He assessed Plaintiff with a Global
7    Assessment Functioning ("GAF") score of 65. (AR 440.)

8    Degenerative Disc Disease

9    On April 26, 2010, State consultative physician Mary Meengs, M.D. examined Plaintiff
10   and assessed his physical capabilities. (AR 429-33.) Dr. Meengs observed that Plaintiff had a
11   grossly normal gait, with no need for any assistive devices. (AR 430-31.) He could sit
12   comfortably, get on and off the examination table, and take his shoes on and off without obvious
13   difficulty. (AR 430.) She noted that although Plaintiff did not have a limp when he walked into
14   her office, he did have one when he walked out. (AR 431.)

15   On September 23, 2010, Plaintiff presented to St. Joseph's Hospital Emergency Room
16   complaining of pain in his right side that radiated down his right leg. (AR 527-30.) He denied
17   having any numbness or tingling. (AR 528.) He also denied having any major history of back
18   problems. (A.R. 529.)

19   In August 4, 2011, an MRI of Plaintiff's lumbar spine was taken at St. Joseph's Hospital.
20   (AR 611-13.) Matthew M. Fluke, M.D. interpreted the result and concluded that the MRI showed
21   "relatively mild" multilevel lumbar spondylosis changes and "diffuse developmentally short
22   pedicles which are contributing somewhat to spinal canal narrowing." (AR 614.)

23   **THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY.**

24   A person filing a claim for social security disability benefits ("the claimant") bears the
25   burden of proving his disability. 20 C.F.R. § 404.1512(a). The claimant must show that he has
26   the "inability to do any substantial gainful activity by reason of any medically determinable
27   physical or mental impairment" which has lasted or is expected to last for twelve or more months.
28   Id. § 404.1505. The ALJ must consider all evidence in the claimant's case record to determine

disability (20 C.F.R. § 404.1520(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (20 C.F.R. § 404.1520). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (AR 27-37.)

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 404.1520(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of December 2, 2009. (AR 29.)

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). A "severe" impairment is one defined as significantly limiting physical or mental ability to do basic work activity. *Id*. The ALJ found that Plaintiff had three severe impairments: depressive disorder, posttraumatic stress disorder ("PTSD") and degenerative disc disease of the lumber spine. (AR 29.)

At Step Three, the ALJ compares the claimant's impairments to a listing of impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. See 20 C.F.R. § 404.1520(d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id.* If the claimant is successful, a disability is presumed and benefits are awarded. *Id.* If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. 20 C.F.R. § 404.1520(e). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ accordingly found that Plaintiff was not entitled to a presumption of disability and proceeded to analyze Plaintiff's RFC. (AR 30-35.) He found that Plaintiff has the RFC to perform light work as defined in 20 CFR 416.967(b) except he is limited to simple, routine, 1 to 2 step, unskilled light work; limited interaction with the general public; limited tandem work with coworkers and no climbing of ladders, ropes and scaffolds. (AR 30.)

At Step Four, the claimant bears the burden of showing he does not have sufficient RFC to perform past relevant work due to his impairments and/or limitations. 20 C.F.R. § 404.1520(e). The ALJ found that Plaintiff has past relevant work as an ironworker, which is skilled work performed at the heavy level of exertion, and as a cashier, which is semiskilled work performed at the light level of exertion. The ALJ found that Plaintiff is unable to perform past relevant work. (AR 35-36.) The ALJ further found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 36-37.) The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Act, since December 2, 2009, the date the application was filed. (AR 37.)

**DISCUSSION**

<u>Severity of Left Hand Impairment</u>

Plaintiff contends that the ALJ failed to correctly evaluate the severity of limitations of his left hand. He claims that the remainder of the sequential evaluation, particularly the Residual Functional Capacity findings at Steps Four and Five, is therefore invalid.

Plaintiff disputes the ALJ's finding that, "there is no indication of any finger-related complaints until June 2011." (AR 29.) Plaintiff correctly argues that the evidence shows he reported to his primary treating physician in March 2004 that he had long standing pain in his left hand. (AR 252.) The court finds, however, that this incorrect statement by the ALJ constitutes harmless error. The existence of a medically severe impairment is based on a claimant's present ability to do basic work activity, not on what ability may or may not have been reported to a physician in the past. *See* 20 C.F.R. Section 404.1520(c).

Plaintiff also argues that he has received "treatment" to his left hand, including examinations, x-rays, home exercises, and a referral to a specialist. Examination and the taking of x-rays do not constitute treatment, but rather are diagnostic in nature. Further, when asked what treatment he had gotten for his left hand in the last two years, Plaintiff stated, "[b]asically it isn't no treatment but [INAUDIBLE] for me to try to do little exercises with it and basically that's it." AR 54. Plaintiff then denied that he had been assigned specific exercises to do, stating that he was

6

in the process of getting a referral to a specialist. The court finds no error.

Plaintiff also relies on the physical consultative examination conducted by a Social Security contracted physician on April 26, 2010, in which the physician found manipulative activities with the left hand were limited to "only occasional" usage for reaching, handling, feeling, and fingering because of the fixed contractures due to old trauma. (AR 433.) The limitations were adopted by Disability Determination Services in their RFC. (AR 488.) Plaintiff asserts that manipulative limitations to occasional usage cannot be considered nonsevere by definition, because they define a more than minimal restriction.

A "severe" impairment is one defined as significantly limiting physical or mental ability to do basic work activity. 20 C.F.R. § 404.1520(c). A severe impairment is one that has more than a minimal effect on the individual's ability to do work. In order to be non-severe, an abnormality must only be a slight abnormality. (SSR 96-3p.) "Occasionally" means occurring from very little up to one-third of the time. SSR 83-10.

The ALJ stated in part:
> a non-examining State Agency physician opined that that [sic] the claimant . . . could occasionally reach, finger and feel with his left hand. (Exhibit 10F). The undersigned has afforded considerable weight to the above opinion, as it is consistent, overall, with the medical record. However, as noted above, the claimant's left non-dominant hand impairment does not result in significant work-related limitations and there is no evidence that the claimant has continued to use a cane for ambulation. There is simply no support in the balance of the record for any limitations with the non-dominant left hand, nor is it consistent even with the claimant's own allegations and activities of daily living. As such, these restrictions have not been incorporated in the residual functional capacity finding contained herein.

(AR 35.)

The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).. The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The court finds that in rejecting the opinion of the "non-examining State Agency physician," the ALJ effectively rejected the underlying opinion of the examining physician noted

7

by Plaintiff. The court further finds that the ALJ set forth clear and convincing reasons for doing so. He found that at the hearing, Plaintiff "testified that he is able to sleep well, that he wakes up around 8 or 9 am; can take care of his personal needs including hygiene and cooking; spends his days reading; and goes out to dinner with friends." The ALJ noted that in April 2010, Plaintiff reported to Bilbrey, PhD that he was able to drive and perform all activities of daily living. (AR 34.) He further noted that Plaintiff stated thereafter to Dr. Meengs that his activities of daily living included reading, playing chess on the computer, walking on the beach, all areas of personal care, cleaning, cooking, doing laundry, and shopping. *Id*. As the ALJ stated, "the record includes descriptions of daily activities which are not limited to the extent one would expect, given his reports of disabling symptoms and limitations." (AR 34.) He found that Plaintiff's reported abilities and activities, in combination with the paucity of clinical findings and overall lack of treatment, indicated that his degree of limitation had been overstated. AR 34. He also found that Plaintiff's sporadic work history prior to the alleged disability onset date raised questions as to whether Plaintiff's unemployment was actually due to medical impairments. *Id*.

In conclusion, the court finds Plaintiff's claims that the ALJ failed to correctly evaluate the severity of limitations of his left hand to be unpersuasive. The court finds no error on the part of the ALJ in rejecting the opinion of the non-examining State Agency physician and the underlying opinion of the examining physician. The ALJ's finding on the severity of the limitations of Plaintiff's left hand is supported by substantial evidence in the record.

<u>The Opinion of the Treating Therapist</u>

Plaintiff contends that the ALJ erred in rejecting the opinion of his treating therapist, Carol McNeill, MFT, of the Mobile Medical Clinic. Specifically, he notes that Ms. McNeill opined that Plaintiff suffered from confusion, mood swings and problems with memory. (AR 445-46.) She further opined that Plaintiff would have difficulty with attendance and schedules and interaction with supervisors would be difficult. *Id*

The ALJ found that although Ms. McNeill was one of Plaintiff's treating therapists, her opinion was not entitled to controlling weight because as a marriage and family counselor, she is not considered an acceptable medical source under the Regulations. (AR 34.) The ALJ, however,

reviewed Ms. McNeill's opinions along with those of other professionals from the Mobile Medical Clinic, and concluded that Plaintiff's mental status examinations had consistently mild findings. (AR 34-35).  The ALJ thus properly rejected Ms. McNeill's findings because they were unsupported by her own office's treatment notes revealing "significant periods of stability and minimal symptoms while on medication and treatment compliant."  (AR 35.)  Evidence in the record that Plaintiff may have been suicidal at some point does not invalidate the ALJ's decision. As the ALJ explained, "while the claimant experienced some intermittent exacerbations in his depressed mood, these were situational, primarily related to his lack of housing, being in prison, enduring trial,  being on parole, and dealing with a terminally ill relative." (AR 35.)  Further, the ALJ found  that Plaintiff's symptoms were "well-controlled" when he took he medication as prescribed." (AR 31.)  *See* 20 C.F.R. Section 416.930(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."); *Warren v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling").

The ALJ concluded, "given the lack of objective support, Ms. McNeill's assessment apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained earlier in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints." (AR 35.)   These include the finding that, "[i]n evaluating the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms, it is noted that the record includes descriptions of daily activities which are not limited to the extent that one would expect, given his reports of disabling symptoms and limitations." (AR 34.)  They also include the conclusion that, "[w]hile the claimant's reported abilities and activities do not alone establish his ability to perform the range of work identified above, in combination with the paucity of clinical findings and overall lack of treatment, they do indicate his degree of limitation has been overstated." (AR 34.)

The court must agree with Defendant that Plaintiff has not demonstrated error on this issue. The ALJ considered Ms. McNeill's findings and set forth specific and valid reasons for rejecting

those findings that were supported by substantial evidence in the record.

Degenerative Disc Disease

Plaintiff contends that the ALJ mis-cited and omitted critical evidence regarding his degenerative disc disease, thereby creating an erroneous finding as to his residual functional capacity. This evidence relates to the results from Plaintiff's August 2011 spinal MRI and a September 2010 hospital emergency room visit.

In discussing Plaintiff's August 2011 MRI, the ALJ stated that "there was no evidence of spinal stenosis or neural foraminal narrowing." Plaintiff argues that this is a mis-statement of the evidence, citing the language in Dr. Fluke's report that, at L4-5 the "[p]osterior protrusion is slightly asymmetric in the right foraminal area with some foraminal narrowing." AR 614. While Plaintiff is thus correct that the ALJ erred in stating that there was no evidence of foraminal narrowing, Plaintiff provides no argument as to how this evidence invalidates the ALJ's findings. Diagnosis alone does not establish disability under the Act. *See Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). Plaintiff provides no explanation as to how the findings of "some foraminal narrowing" impaired his ability to perform basic work activities under the Act. This is fatal to his argument. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (citing 20 C.F.R. Section 404.1525(d) for principle that claimant has the burden of proving that he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1.)

Plaintiff also contend that the ALJ did not accurately describe the evidence from his September 2010 visit to the St. Joseph's Hospital Emergency Room. The court finds no merit to Plaintiff's contention. The ALJ's description of the evidence states: "[w]hile he presented to the St. Joseph's Emergency room in September 2010 with an increase in the right-sided low back pain radiating down the right lower extremity, there were no signs of numbness or tingling and neurological functioning was intact (Exhibit 16 F). (AR 33.) The language from the Emergency Department Record states, "over the last week or so has been having increasing right low back pain that radiates down his right leg. Over the last three days, it has been getting more and more severe." (AR 528.) The Emergency Department Record further states, "[h]e denies any numbness or tingling." *Id*. Under the heading, GENERAL APPEARANCE, the Emergency

Department Record states, "[w]ell appearing in moderate-to-severe painful distress."  (AR 528.)  Under the heading, "NEUROLOGIC, the Emergency Department Record states, "[t]he patient is awake, alert.  Normal speech.  Walks with a limp.  Motor is 5/5 in both lower extremities."  (AR 529.)  The ALJ is not obligated to discuss all the evidence presented to him, and the court finds the ALJ's summary of the record from September 2010 visit to St. Joseph's Emergency Room to be accurate.  *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (although fairly detailed finds are required, the Secretary need not discuss all the evidence presented to her).  The court finds no error.

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: September 9, 2015

_____
NANDOR J. VADAS
United States Magistrate Judge

11